## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**TAYLOR MORRISON, INC.,** <u>et. al</u>**,**

      **Plaintiffs,**

**vs.**                                    **Case No.: 8:10-CV-1347-33EAJ**

**CHARTIS SPECIALTY INSURANCE CO.,**

      **Defendant.**

_____/

## <u>ORDER</u>

Before the court are Plaintiffs Taylor Morrison, Inc., Taylor Morrison Services, Inc., Taylor Woodrow Communities at Vasari, LLC, Taylor Morrison of Florida, Inc., and Taylor Woodrow Homes – Southwest Florida Division, LLC's (collectively "Plaintiffs") **Motion to Compel Depositions** (Dkt. 123), Defendant's **Opposition** (Dkt. 135), and Defendant's **Expedited Motion for Protective Order** (Dkt. 127), as well as the materials filed in support of the motions .[1]

## <u>Background</u>

Plaintiffs are a group of related companies that design and construct residential homes. Defendant, an insurer, sold commercial liability policies to Plaintiffs.  Multiple homeowners have sued Plaintiffs alleging property damage and personal injury caused by defective Chinese drywall installed in homes constructed by Plaintiffs.  In the present case, Plaintiffs seek a judgment declaring that Defendant has a duty to indemnify Plaintiffs for damages that Plaintiffs became legally obligated to pay as a result of the defective-drywall lawsuits by homeowners.

On May 26, 2011, Plaintiffs filed a motion to compel several of Defendant's corporate

---

[1] Plaintiffs have not filed a response to Defendant's motion for a protective order, which is essentially a cross-motion to Plaintiffs' motion to compel.  Both sides have presented sufficient argument to permit a ruling.

executives to appear for a deposition, including: Michael Smithers, Kevin Maloney, Christopher Kopser, Andrew Barberis, and Megan Watt.[2]   The next day, Defendant filed an "Expedited Motion" seeking to prevent Plaintiffs from deposing the aforementioned executives as well as Richard Woollams, Defendant's Senior Vice President and Chief Claims Officer.   The depositions are scheduled to take place between June 10, 2011 and June 16, 2011.

## Discussion

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."   Fed. R. Civ. P. 26(c)(1).   The party seeking the protective order has the burden of showing good cause.   United States v. Garrett, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978) (citation omitted).   Good cause must be demonstrated with particularity, and stereotyped, conclusory statements will not suffice.   Id.   When determining good cause, courts may balance the interests of the parties as well as consider the likelihood and severity of the perceived harm.   See In re Alexander Grant & Co. Litig., 820 F.2d 352, 356 (11th Cir. 1987) (per curiam).   A court must limit the scope of discovery if it determines that the discovery sought is unreasonably cumulative or duplicative or if it can be obtained from some other source that is more convenient, less burdensome, or less expensive.   Fed. R. Civ. P. 26(b)(2)(C).

Absent extraordinary circumstances, a court should not preclude a deposition.   Salter v. Upjohn Co., 593 F.2d 649, 651 (5th Cir. 1979).   However, before deposing a high-ranking corporate official, a party should explore other avenues of discovery, such as interrogatories or deposing lower-

---

[2]   The titles of the executives are as follows: (1) Michael Smithers, Executive Vice President and Profit Center Manager, Construction, Excess Casualty; (2) Kevin Maloney, Executive Vice President and Profit Center Manager, Real Estate and Financial Institutions, Excess Casualty; (3) Christopher Kopser, President of the Excess Casualty Division, Commercial Casualty; (4) Andrew Barberis, Executive Vice President, Property and Casualty Severity Claims; and (5) Megan Watts, Senior Vice President.

level employees with more direct knowledge of the subject matter.  Id.; see also Baine v. Gen. Motors Corp., 141 F.R.D. 332, 334-35 (M.D. Ala. 1991).  Furthermore, a court may prevent the deposition of a high-ranking official who is removed from the daily subject matter of the litigation and who does not have "unique personal knowledge" of the issues at hand.  Baine, 141 F.R.D. at 334.

Defendant argues that the would-be deponents are corporate executives with no unique, firsthand knowledge of Plaintiffs' claims and no day-to-day involvement in policy underwriting or claims handling.  Defendant submits that there are less-senior employees available to testify on the same issues.  Defendant also contends that testimony from these executives is irrelevant as this case is primarily a matter of construing unambiguous insurance policies, which is a matter for the court.  Additionally, some of the named executives oversee claims handling, which Defendant contends is not an issue in this case.

Michael Smithers and Kevin Maloney are executive vice presidents who were involved in underwriting some of Plaintiffs' policies.  Although Warren Hayward was Defendant's employee tasked with the day-to-day responsibilities of underwriting Plaintiffs' policies, Smithers and Maloney supervised the underwriting process by approving policy pricing and terms and answering questions about how the policies worked.  Plaintiffs deposed Hayward on May 19, 2011, and Defendant argues that testimony from Smithers and Maloney would be duplicative of Hayward's.  However, the court finds that Smithers' and Maloney's firsthand involvement in the underwriting process justifies compelling their depositions and their depositions would not be unreasonably duplicative.  Furthermore, until the court determines whether the policy terms at issue are clear or ambiguous, testimony from these witnesses is relevant.  See Fed. R. Civ. P. 26(b)(1).

On the other hand, it does not appear that the other four individuals have firsthand knowledge

of Plaintiffs' claims or policy underwriting.  They do not directly supervise employees who handle

such tasks.  Plaintiffs have not demonstrated that any of these individuals possess unique, personal

knowledge regarding Plaintiffs' claims,[3] and there is no indication that Plaintiffs tried to obtain the

relevant information using more convenient, less-burdensome means of discovery, such as

interrogatories or deposing lower-level employees.  As a result, the court finds good cause to issue

a protective order precluding the depositions of Christopher Kopser, Andrew Barberis, Megan Watt,

and Richard Woollams.

Accordingly, and upon consideration, it is **ORDERED** and **ADJUDGED** that:

(1)     Plaintiffs' **Motion to Compel Depositions** (Dkt. 123) and Defendant's **Expedited Motion for Protective Order** (Dkt. 127) are both **GRANTED** in part and **DENIED** in part.

(2)     Plaintiffs' deposition notices as to Christopher Kopser, Andrew Barberis, Megan Watt, and Richard Woollams are quashed.

(3)     The depositions of Michael Smithers and Kevin Maloney shall take place as scheduled.

**DONE AND ORDERED** in Tampa, Florida on this 2nd day of June, 2011.

---

[3] Plaintiffs contend that they are entitled to depose Christopher Kopser and Andrew Barberis because both attended a meeting with Plaintiffs where they suggested that Plaintiffs' claims were denied for reasons extrinsic to Plaintiffs' policies.  However, Plaintiffs have not demonstrated that this knowledge is unique or personal to these two (2) executives.

4

ELIZABETH A JENKINS
United States Magistrate Judge